MARCUS PERSONS, executor &c., MILTON MOSHER and RHUA his wife *vs.* FREDERICK SNOOK and others.

*A testator, by his will, directed his personal estate to be sold, immediately after his death, by his executor, and the proceeds to be disposed of thus: $25 to be paid to S. Stacey, the heir of the testator's deceased daughter, Hannah, and the remainder to be divided equally between his living children, Frederick, Charity, Sally, Laurilla, Rhoda, Rhua, and the heirs of Rebecca and Maria, deceased children; making eight shares; Rhua to take immediately and absolutely; the five first named to have only the use or interest of their respective shares during life, and on the death of either of them his or her share to go to his or her "heirs," if any living; otherwise to the testator's children then living, but the said first five surviving to have only the use during life. If there were no "heirs" of Rebecca or Maria sur-*

viving the testator, their share to go to the testator's surviving children; the said first five to have only the use during life. As to his real estate, the testator devised to his daughter Rhua the use of the home farm and wood lot for the term of three years from his death, and twenty-five acres in fee, off of the south end of the farm, including buildings, to be set off to her at the expiration of said term, as her share. A power in trust was given to the executor to sell and convey the remainder of the farm and wood-lot to Rhua and her husband, at the price of $50 an acre if they consented. The sum resulting from the sale to be divided into seven equal shares. One-fifth of each share to be paid annually, till paid in full. In case of default, further time to be allowed for payment, not exceeding ten years from the date of the sale, but interest to be paid annually, after five years. The use or interest of one of said shares to be paid annually to each of said five children first named, during life, and on the death of either of them, his or her share to be paid to his or her "heirs," if any living; if not, the use of it to the testator's children then surviving. One of said shares to be paid directly to the heirs of each of his daughters, Rebecca and Maria, if any living; if not, such share to go to the testator's surviving children; Rhua to take her share directly, and the others to have the use, only, during life. He then devised to Laurilla, for life, remainder to her heirs, four acres, occupied by her, as part payment of her share of the real estate, at the price of $50 an acre, if she elected so to accept it. In case of her leaving no "heirs," the four acres to be sold for the use of the testator's children; the avails of the sale to be kept and disposed of, for their use, as before directed in respect to the avails of the sale of the other portions of the real estate. The executor was directed to perform all the requirements and conditions of the will as to the sale of both personal and real estate, and to convey the same by deed, &c.

*Held* 1. That as to the seven shares of the testator's personal estate remaining after the payment of Rhua's share, nothing was given, or intended to be given, by the will, to the five living children named, or any of them, except interest, or use, for life. That this brought the disposition of the personal property directly within the prohibition of the statute in regard to the suspension of the absolute ownership of personal property for the period of more than two lives in being at the death of a testator.

2. That the grandchildren living at the death of the testator did not take a vested interest in the share of their parents, subject to open and let in after-born children. That their interests were contingent, and depended entirely upon the event of their surviving their parents.

3. That each share of the personal estate being liable to an unlawful suspension of absolute ownership, the disposition of at least five of the seven, by the will, was void.

4. That the executor took no title to any portion of the real estate; it not being given to him, in terms.

5. That the heirs at law took all the real estate not devised absolutely, by

the will, subject to the execution of the trust as a power, if valid, and subject also to the estate for years therein given to Rhua.

6. That the absolute power of alienation of the title, of the real estate, was not suspended, by the will. That although the power of the executor to convey was suspended for the term of three years, in the meantime the remainder, subject to the execution of the power, remained perfectly vested in the heirs at law.

7. That as to the real estate not devised, and in reference to which, only a power in trust to sell was given to the executor, the only object of the power being to establish a void trust with the proceeds of the sale, such power was void, and the estate vested in the heirs at law, absolutely.

8. That the two shares, from the proceeds of the personal estate which were to be paid to the heirs of Rebecca and Maria, were valid bequests; if such heirs were living at the death of the testator. But that the other two shares, given to them, from the proceeds of the sale of the real estate, failed with the failure of the power of sale; and those grandchildren must take, if at all, as heirs at law of the testator.

Decree declaring all the provisions of the will void, except the devises and bequests to Rhua, the bequest to S. Stacey, and the bequest of the two shares of the proceeds of the personal estate to the heirs of Rebecca and Maria; and compelling Rhua to elect whether she would take under the provisions of the will, and relinquish her claim as heir at law of the testator, or relinquish her rights under the will and take her share as heir, merely, in the whole estate.

THIS was a controversy submitted to the court upon a case for a determination and judgment thereon, pursuant to the provisions of section 372 of the Code of Procedure.

Martin Snook died on the 2d day of September, in the year 1860, at the town of Phelps in the county of Ontario, which was the place of his residence at, and for many years prior to the time of his death, owning and possessed of a considerable personal property, and the real estate described in the will hereinafter set forth; and leaving Rhua Mosher, Charity Bond, Laurilla Allen, Rhoda Bounds and Sally Merryfield, his daughters, Frederick Snook, his son, Alonzo Stacey, the son of his deceased daughter Hannah Stacey, and the children of his deceased daughters, Rebecca Daniels and Maria Nickerson, the number, names and places of residence of whom are unknown, his heirs at law and next of kin. He did not leave a widow. He left a last will and

testament, which was duly proved as a will of both real and personal estate, before the surrogate of Ontario county, and was admitted to probate and record by said surrogate, on the 29th day of December, 1860; and on the same day the surrogate issued letters testamentary on said will to the plaintiff, Marcus Persons, who is named therein as executor, and said Persons accepted the executorship and entered upon the duties thereof. By said will the testator devised and bequeathed as follows: "First. I will that my personal estate, after my death, be sold and the proceeds thereof be disposed of as follows: Twenty-five dollars from said sale be paid to Samson Stacey, heir of Hannah Stacey, deceased, one of my daughters, and the balance thereof to be divided equally between the following named as my children, who now are living, and to those that are dead, to their heirs the use or interest of same one-eighth sum to be paid annually to Frederick Snook, Charity Bond, Sally Merryfield, Laurilla Allen and Rhoda Bounds, during their life, and then to their heirs if living, entire share and interest, otherwise to go equally to my children who are then living, or to their use as above or hereafter specified; and the one-eighth of said sum to be paid to the heirs of Rebecca Daniels and Maria Nickerson, and one-eighth of said sum to be paid to Rhua Mosher, one of my daughters, direct and absolute if there being no heirs living of the above children last named except Rhua Mosher, the interest of said property to go to my children or their use thereof, according to the condition above specified.

Second. I will that my real estate, after my death, be disposed of as follows: the home farm, consisting of about eighty-eight acres of land, and the pasture and wood lot situate on and on the north side of the New York Central rail road, containing about forty acres of land, also the lot of land used and occupied for several years past by Laurilla Allen, my daughter, being about four acres of land, more or less: first, I will the use of the home farm and pasture and

wood lot, to Rhua Mosher, my daughter, for the term of three years after my death, in consideration of my living with them or her, said Rhua is to keep said farm and land in good repair and not to cut any timber only such as may be necessary for repairs of said land and fuel for their use; second, at the termination of said time of three years, I will that there be set off to said Rhua Mosher, twenty-five acres of land to be taken from off the south end of said home farm, including all the buildings thereon, as her share in said real estate, then the number of acres remaining, to be sold and conveyed by deed by my executor to said Rhua Mosher and her husband, Milton Mosher, if they consent to the same, for the sum of fifty dollars per acre, and the sum resulting from such sale to be divided in seven equal shares, and the one-fifth of each share to be paid annually thereafter, until paid, if not so paid a still further time is to be allowed for the payments of said each share, not to exceed ten years from the date of such sale, but interest is to be paid annually after the expiration of five years, on all sums of such shares then unpaid the use or interest only of the moneys resulting from such sale, and on such sums to be paid annually by my executor as it shall accrue to the following named as my children, to wit: Frederick Snook, Charity Bond, Sally Merryfield, Laurilla Allen, Rhoda Bounds, during their life, after their death to go to their heirs if living, otherwise to my children then living the use thereof, and the one-seventh or share of such moneys from said sale to be paid to the heirs of Rebecca Daniels, and to the heirs of Maria Nickerson, if then living, if not, to my children then living to have the use only as heretofore specified, except Rhoda Moshier, to her direct.

I will that the lot of land heretofore described as being occupied by said Laurilla Allen go to her as part payment of her share in said real estate at the price of fifty dollars per acre, if she elects so to accept of the same, and she to have the use of the same during her life, then to go to her

heirs or heir if living, if dead the use by sale to my children living, according to the intent and meaning heretofore expressed.

I will that the village lot of land owned now by me, situate in the village of Phelps in said county, be fenced with good substantial materials, and the same be kept and preserved for a family burying ground, and the expenses for so fencing to be paid for by my executor, out of my personal estate, and the use of said ground for burial of the dead to be for my family and heirs and generation to come, but that thereafter to keep the same in good fence and repair, and to pay all expenses that may accrue thereon for taxes or otherwise ; said Rhoda Mosher and her husband Milton, is to pay all expenses for taxes or otherwise on the within described land to be used and occupied by them for the three years after my death as herein specified.

Lastly. I hereby constitute and appoint Marcus Persons to be the executor of this my last will and testament, to do and perform all the requirements and conditions of said will, as to the sale of both personal and real property and estate, and to convey the same by deed, receive and to pay over all moneys or interest on moneys to the several persons, according to the conditions herein specified and set forth."

It was claimed on the part of the defendants that said will was void as to the real estate, because by its provisions the absolute power of alienation is or may be suspended for a longer time than two lives in being at the making of the will, and that the will is also void as to the personal estate, for the same reason. It was also claimed by the defendants that for the reasons above stated, the said will should not be executed, and the said executor should not proceed further in the execution thereof. These claims and each of them were denied by the plaintiffs. They claimed that each and every of the provisions of the will was valid, and that it should be carried out and executed. The parties on these facts, asked the judgment of the court, deciding the ques-

tions above presented, and giving a construction to the said will, and awarding costs as the court should think equitable.

*Smith & Lapham,* for the plaintiffs. I. The will does not suspend the power of alienation of the real estate. The fee is not devised. It descends to the heirs-at-law, subject to the estate for years, to Mrs. Mosher in the farm and wood lot, and the right vested in Mrs. Allen respecting the four acres occupied by her, and subject also to the execution of the special power of sale given to the executor in trust. (1 *R. S.* 729, § 59. 4 *Paige,* 317. 3 *Comst.* 276.) The executor does not take the fee by *implication.* (1 *Seld.* 408.) Even if the land had been in terms *devised* to the executor to be sold for the benefit of legatees, yet as he is not also empowered to receive the rents and profits, no estate would have vested in him, but the trust would have been valid as a power, and the lands would have descended to the heirs, or passed to the devisee, subject to the execution of the power. (1 *R. S.* 729, § 56. 8 *Paige,* 295, 304.)

II. The devise of the estate for years to Mrs. Mosher is valid, and so is the power given to the executor to sell and convey to her and her husband, on the terms expressed in the will. (1 *R. S.* 732, §§ 73, 76; 734, § 95.)

III. The bequest of one-eighth of the residue of the personal estate, to Mrs. Mosher, vested in her immediately on the death of the testator, and is valid. So, also, of the bequest of one-eighth of the residue to the heirs of Rebecca Daniels and of Maria Nickerson, respectively, and the bequest, in default of such heirs, to Mrs. Mosher, as one of the testator's surviving children, of an equal portion of such shares. The time of payment is not postponed.

IV. The bequests of one-eighth of the residue to each of the first five children of the testator named in the will, for life, remainder to their heirs, are also valid. The grandchildren now in existence have vested remainders in the capital of the shares of their parents, subject to open and let

in after-born children, and subject, also, to be wholly divested by an entire failure of issue at the death of their parents respectively. (*De Peyster* v. *Clendining, 8 Paige,* 307.)

V. If, however, either of the five children shall die without issue, his or her share shall be divided among the survivors, including the heirs of Mrs. Daniels and Mrs. Nickerson, *per stirpes*; that is to say, Mrs. Mosher and the heirs of Mrs. Daniels and Mrs. Nickerson, respectively, will take their portions of the principal of such share absolutely, and the other survivors will have merely the income of their portions, during life, remainder not disposed of by the will. The remainder to Mrs. Mosher and the heirs of Mrs. Daniels and Mrs. Nickerson are valid, as they vest absolutely after one life. (26 *Wend.* 21.) But, possibly, the remainders to the other children of the testator, *for life,* are void, for the reason that in case of the death of two or more of the five children, without issue, the ownership of such remainders, or a portion of them, might be suspended for a longer period than two lives.

VI. But even if it be assumed for the moment, that such last mentioned remainders are void, all the other bequests can be separated from them, and will be upheld as far as practicable, and are valid. (8 *Paige,* 104, 306. 5 *Denio,* 646. 7 *Barb.* 226.)

VII. The avails to be realized from a sale of the real estate, are to be regarded as personal property, and governed by the rules above stated, and the contingent remainders to Mrs. Mosher, in case of the death of any of the five children without issue, are valid, and will be upheld, for the reasons above stated.

VIII. In case the remainders to the five children surviving, are declared void, while the other bequests are upheld, the only result is, that the void remainders, and the estate undisposed of by the will, descend to the next of kin; and those having valid bequests or devises will be compelled to elect between the provisions in the will for their benefit, and their

shares as heirs and next of kin, in case of intestacy. (16 *Wend.* 141–144, 268, 277.)

*Faurot & Herron,* for the defendants. I. The word "heirs," used in this will, means *issue,* or, at least, persons, other than the testator's children.

II. By the provisions of such will, none of the testator's children, living when it was made, or that might afterwards be born, could, in any event, take more than the use or interest of the proceeds of the sale of the real and personal estate, for life, except Rhua Mosher; and, in the event that all such children should die without issue, the residue of such proceeds would not pass, but would remain undisposed of.

III. Should all such children, but one, die without issue, and that *one* leave issue at his or her death, such latter issue would take the whole of such residue; in which case, the absolute ownership of such residue would be suspended for at least five lives in being, at the death of the testator, and for as many more as the testator should have children born, after the making of the will.

IV. The use of the home farm and pasture, and wood lot, is given to Rhua Mosher, for the term of three years, after the death of the testator, and during that time no person takes any *other* or further interest therein. When that time expires, there is to be taken from the south end of the home farm, twenty-five acres of land, containing all the buildings thereon, and set off by the executor to Rhua Mosher, and the residue of such real estate is to be sold by them and kept for the use of certain persons named, provided Rhua and her husband elect to purchase it; otherwise it remains wholly undisposed of; so that the future interests covered by the will do not vest in any of the devisees or legatees, till the expiration of three years after the testator's death, and then only for life, so far as the testator's children are concerned, except Rhua.

V. Thus the absolute power of alienation of the whole of

such real estate is suspended for three years by this will, as there can be no person in being, during that time, by whom an absolute fee in possession can be conveyed. (3 *R. S. 5th ed.* 11, § 14.) And such suspension may endure for more than two lives in being at the creation of the estate, as the testator's children may all die during that time; and if it may, the will in that respect, is void. (2 *R. S. 5th ed.* 11, § 14. *Boynton* v. *Hoyt,* 1 *Denio,* 53. *Hawley* v. *James,* 16 *Wend.* 61.)

VI. This will conveys both the real and personal estate to the executors, in trust for the uses and purposes mentioned in the will. It is, therefore, void as to the personal property, as suspending the absolute ownership for more than two lives in being at the death of the testator. (3 *R. S. 5th ed.* 75, § 1. *McSorley* v. *McSorley's ex'rs,* 4 *Sand. Ch.* 414. *Tayloe* v. *Gould,* 10 *Barb.* 388. *Hawley* v. *James,* 16 *Wend.* 61. *Jennings* v. *Jennings,* 3 *Seld.* 547. *Gott* v. *Cook,* 7 *Paige,* 521. *Lang* v. *Ropke,* 5 *Sand.* 363. *Amory* v. *Lord,* 5 *Seld.* 403. *Thomson* v. *Livingston,* 4 *Sand.* 539.) And is void as to the real estate, as suspending the absolute power of alienation for more than two lives in being at the creation of the estate. (*See the authorities before cited, particularly* 16 *Wend.* 125.)

VII. If the will, as to the personal and real estate, is void in respect to the testator's children, other that Rhua Mosher, then it cannot be supported as to her, for the facts as to her are so connected with the others, which are illegal, that it is impossible to separate them, without defeating the intention of the testator. (16 *Wend.* 141.) So if Rhua and her husband should refuse to purchase as provided by the will, the residue of the real estate would fall back, to be divided among all the heirs, and she would take a share of it, and thus defeat the intentions of the testator.

*By the Court,* JOHNSON, J. In respect to the personal estate of the testator, the obvious intention to be gathered

from the provisions of the will was, to have it sold by the executor, and the proceeds after paying twenty-five dollars therefrom to Samuel Stacey, the child and heir at law of a deceased daughter of the testator, divided into eight shares, one of which was to be paid to the testator's daughter Rhua Mosher, directly, in her own right, as her share. Five of the other shares were to be retained by the executor, and the interest only, on one share, to be paid by him, to each of five surviving children named in the will, during the life of each; and two were to be paid over, one to the heirs of Rebecca Daniels and one to the heirs of Maria Nickerson, if any such heirs should be living at the death of the testator. In case no heirs of either of the persons last named should then be living, the executor was to retain the share designed for such heirs, and pay the interest thereof to the testator's surviving children, during their lives. Upon the death of the surviving children of the testator, or either of them, the share of which the one so dying had the use during his or her life, was to go directly and absolutely to his or her heirs if there were any heirs or issue then living. If not, the use or interest of such share was to be paid by the executor to the testator's surviving children, during their lives. It is quite apparent that the testator used the term "heirs" of his children then living, or deceased children, to designate lawful issue of such children, or other heirs contradistinguished from and not including his own children. It is claimed on the part of the plaintiffs that upon the death of either of the surviving children, without heirs, the share of which such child had had the use, went directly and absolutely to the testator's remaining children. But it is quite clear, I think, from all the terms and provisions of the will, that the intention of the testator was to give the survivors the use, only, of such share during their lives equally. He first provides that the use or interest of the share, one-eighth, shall be paid to each of his children living, during the life of such child. Then, at the decease of any child it is provided that

the entire share shall go to the heirs of such child, if any heirs are living at the time of such death. If not, then such share is to go to his " children who are then living, or to their use, as above or hereafter specified." Nothing but " *use*" is specified *above* in the will, for the living children, and *use or interest only*, is *afterwards* specified, in providing for the shares designed for the heirs of Rebecca Daniels, and Maria Nickerson, in the event of there being no heirs of these persons living. The same disposition, precisely, is made of the seven shares into which the proceeds of the real estate when sold was to be divided. As to the seven shares, therefore, it is manifest that nothing was given or intended to be given, to the five living children named, or any of them, except interest or use for life.

This brings this disposition of the personal property directly within the prohibition of the statute, in regard to the suspension of the absolute ownership of personal property for the period of more than two lives in being at the death of a testator. (1 *R. S.* 773, § 1.)

It is claimed on the part of the plaintiffs that the grandchildren living at the death of the testator took a vested interest in the share of their parents, subject to open and let in after-born children. But this clearly is not so. Their interests were not vested, but contingent, and depended entirely upon the event of their surviving their parents. If they did not, the use of the share and the trust continued to other beneficiaries, and the absolute ownership would necessarily go to others. Whether it would ever vest in the grandchildren could not be determined until the death of their parents. The rule is, that if, according to the provisions of the will, such a suspension of absolute ownership may possibly happen, it renders the bequest void, the same as though the happening of such event were inevitable.

That such may be the result in regard to either or all of these shares is quite obvious. In case of the death of either one of the children of the testator without heirs, the absolute

ownership of his or her share would necessarily be suspended through each of the five lives. Each survivor, in that event, would take his proportion of the use of such share during life, the use in such case of the entire share continuing to the survivors in succession through the entire series. Each share being liable to this unlawful suspension of absolute ownership, the disposition of at least five of the seven by the will is void.

In respect to the real estate, the executor, as trustee, took, under the will, no title to any portion of it. It is not given to him in terms; nor is he to have any thing to do with the rents and profits. Every thing which he is required by the will to do with the real estate, as such, may be done under a simple power without the vesting of any title in the trustee. It is therefore a mere power in trust, and the lands not absolutely disposed of by the will descended to the heirs of the testator subject to the execution of the trust as a power, if valid. (1 *R. S.* 129, §§ 58, 59.. *De Peyster* v. *Clendining,* 8 *Paige,* 304, 5.)

The executor, as trustee, never takes a fee by implication, unless the fee in him is necessary to the complete execution of the trust. (*Tucker* v. *Tucker,* 1 *Selden,* 408.) The heirs at law of the testator, therefore, took all the real estate not devised absolutely by the will, subject to the execution of the trust as a power, if valid, and subject also to the estate for years therein given to Mrs. Mosher. The absolute power of alienation of the title was not suspended at all, by the will, and no question under the statute arises in the case. The power of the executor to convey was suspended for the term of three years, but in the mean time the remainder, subject to the execution of the power, remained perfectly vested in the heirs at law.

The devises and bequest to Mrs. Mosher, being absolute and unconditional, and in nowise connected with the trusts created by the will, are not affected by its void provisions. She must therefore be held to take as by a valid devise, all

the interest in the real estate given directly to her by the terms of the will. As to the residue of the real estate not devised, and in reference to which a power in trust to sell only was given to the executor, the only object of the power being to establish a void trust with the proceeds of the sale, it is manifest that the power must be held to be void, and the estate to vest in the heirs at law of the testator absolutely.

But inasmuch as it is apparent that the testator intended to make a complete and perfect disposition of his entire estate, real and personal, and this intention is to be defeated by reason of his ignorance of the law, Mrs. Mosher ought not to be permitted to retain what she gets by the will and then share equally with the other children in the residue of the estate as heir at law. If she were to be allowed to take under the will and in hostility to it also, the intention of the testator not only as to the other children, but as to herself, would be entirely frustrated and disappointed. She should therefore be put to her election whether she will take under the will, or as one of the heirs at law merely, according to the rules laid down by Nelson, chief justice, in *Hawley* v. *James,* (16 *Wend.* 142, 143.)

The two shares, from the proceeds of the personal estate, which were to be paid to the heirs of Rebecca Daniels, and Maria Nickerson, are valid bequests, if such heirs were living at the death of the testator ; as in that event the shares were to be paid to them directly, and not to be held in trust. Otherwise, if no such heirs were then living and those shares went into the trust fund, they would follow the other five shares.

The other two shares, however, given to them, from the proceeds of the sale of the real estate, must necessarily fail with the failure of the power of sale, and these grandchildren must take, if at all, as heirs at law of the testator.

There must therefore be a decree declaring all the provisions of the will void except the devises and bequest to Rhua

Mosher, the bequest to Samson Stacey, and the bequest of the two shares of the proceeds of the personal estate, to the heirs of Rebecca Daniels and Maria Nickerson, and compelling Mrs. Mosher to elect whether she will take under the provisions of the will and relinquish her claim as heir at law of the testator, or relinquish her rights under the will and take her share as heir merely, in the whole estate. Costs of both parties to be paid out of the estate.

[MONROE GENERAL TERM, June 2, 1862. *Johnson, Welles* and *Campbell,* Justices.]