## THE HOME NATIONAL BANK

### v.

## LEVI NEWTON.

BANKS—RIGHT TO APPLY DEPOSIT IN PAYMENT OF DEBT OF DEPOSITOR.—Where a depositor in a bank is indebted to the bank by bill, note or other independent indebtedness, the bank has the right to apply so much of the funds of the depositor to the payment of his matured indebtedness as may be necessary to satisfy the same. So, where a bank held the note of a depositor for a certain sum, the bank could on the morning of the last day of grace upon such note, apply to its payment any money of the depositor then remaining on deposit in such bank.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed June 14, 1881.

Messrs. GRANT, SWIFT & BRADY, for appellant; upon the right of a bank to appropriate a depositor's funds to the payment of his note at maturity, cited Morse on Banks, 37; McDowell v. Bank of Wilmington, 1 Harr. 369; Dawson v. Real Estate Bank, 5 Pike, 283; Mandevill v. Union Bank, 9 Cranch, 9; Forster v. Clements, 2 Camp, 17.

The note was presentable for payment and payment might be demanded at any time during banking hours of the last day of grace: 1 Daniell on Neg. Inst. § 600; Leftly v. Mills, 4 Term R. 170.

If a bill be accepted payable at a banker's, and the banker is holder at maturity that fact alone amounts to presentment: 1

Daniell on Neg. Inst. § 636; Nichols v. Goldsmith, 7 Wend. 160.

Presentment of the check at the bank while the drawer had funds to his credit on deposit, was necessary to enable the holder to recover against the bank: Fourth Nat. Bank v. City Nat. Bank, 68 Ill. 398.

Messrs. E. & A. VAN BUREN, for appellee; contending that application of the funds on deposit could not be made until the note had matured, and the note did not mature until the expiration of the three days of grace, cited McCley v. Babcock, 1 Bradwell, 414 ; Edwards on Bills, § 525; 2 Parsons on Notes and Bills, 296 ; Outhort v. Ballen, 41 Barb. 33.

A banker's lien does not extend to the money left on deposit with him according to the custom and usages of banks: Fourth Nat. Bank v. City Nat. Bank, 68 Ill. 398.

The moment this check was presented the holder became entitled to payment if there were sufficient funds on deposit : Munn v. Burch, 25 Ill. 35; Brown v. Leckie, 43 Ill. 497.

WILSON, J. This was an action brought by appellee, Levi Newton, against the Home National Bank upon a check drawn by one Newell upon the bank for $66.50, payable to the order of appellee. Payment was refused by the bank on the ground of want of funds belonging to the drawer.

The facts are substantially these : Newell kept a general bank account as depositor with the bank. On September 21st, 1878, he made and delivered to the bank his promissory note of that date, for $1,500, payable to the order of and at the bank, ninety days after date. On the morning of December 23d, 1878, which was the last day of grace on Newell's note, and soon after the opening of the bank, the note being unpaid, and still held by the bank, and there being a balance of $300 standing to the credit of Newell on his bank account, and no check or other order of Newell having been presented for payment, the bank appropriated and applied the $300 balance on Newell's note. On the same day about half past eleven o'clock, and after this balance had been so applied, several checks on the bank, and among them the one in question, drawn by

Newell, came to the bank, through the clearing house, for payment, but were returned by the bank unpaid, for the reason that there were no funds of Newell with which to honor them.

The principal question for determination, is whether the bank was authorized to make the application of Newell's balance of account to the payment of his note at the time it did, or whether it could only make such application at the close of business hours on that day.

It is a settled principle that where a depositor in a bank is indebted to the bank by bill, note, or other independent indebtedness, the bank has the right to apply so much of the funds of the depositor to the payment of his matured indebtedness, as may be necessary to satisfy the same. Morse on Banks and Banking, 2d Ed. 42, *et seq.;* Daniell on Negotiable Instruments; Commercial Bank of Albany v. Hughes, 17 Wend. 94.

And the same rule obtains where a depositor makes his paper to third persons payable at the bank. As it is the duty of the bank to pay its customers' checks, when in funds, so at least it has authority, if it is not under actual obligation to pay his notes and acceptances made payable at the bank. It is a presumption of law that if a customer does so make payable or negotiable at a bank, any of his paper, it is his intent to have the same discharged from his deposit. Morse on Banks and Banking, 37. The neglect of the bank to make such appropriation would discharge the indorsers and sureties. McDowell v. Bank of Wilmington, 1 Harrington, 369; Dawson v. Real estate Bank, 5 Pike Ark, 283. The act of thus making his paper payable at a bank is considered as much his order to pay as would be his check, and if the bank pay without express orders to the contrary, it is a defense to a suit by the depositor for the money so paid. Mandeville v. Union Bank of Georgetown, 9 Cranch, 9. And the rule seems to be settled that if a bank advances the money to pay a note or bill of its customer made payable at the bank, it may recover from the depositor, as for money loaned, the paper so made payable being deemed equivalent to a request to pay. He makes the bank his agent, with implied authority to protect

his credit by appropriating his deposits to the payment of his maturing obligations made payable at the bank. Foster v. Clements, 2 Camp, 17; 9 Cranch, *supra*. These general principles are sufficient to show the relation which exists between a bank and its depositors in respect to the paper of the latter, made payable by its terms at the bank, and they make the bank the agent, not of the payee of such paper, but of the maker.

Without controverting these general principles, it is insisted by appellee that Newell, the maker of the note, had the whole of the last day of grace in which to pay his note, and that as no suit would lie against him for its non-payment until the expiration of that day, the bank was not authorized to appropriate the balance of its account to its payment until the day had expired, or at least until the close of ordinary business hours.

As to whether the maker of a promissory note may be sued on the day of its maturity, or third day of grace, when grace is allowable, after demand and refusal to pay, there is a great conflict in the authorities. The rule in this State is that the maker has the whole of the day in which to pay, and that suit brought on that day is premature. Walter v. Kirk, 14 Ill. 55. Although it does not appear in that case whether the note was payable at a particular place, nor whether there had been a demand for payment on the last day of grace. This case was followed in Reese v. Mitchell, 41 Ill. 365 ; and such seems to be the rule in New York. Osborne v. Moncure, 3 Wend. 170 ; Smith v. Aylesworth, 40 Barb. 144 ; and in California. Wilcombe v. Dodge, 3 Cal. 260.

On the other hand it has been uniformly held in Massachusetts that after demand and refusal of payment by the maker of a promissory note or the acceptor of a bill, at any reasonable time on the last day of grace, the note becomes due and payable ; and if not then paid, an action may immediately be commenced against the maker or acceptor. Chief Justice Shaw, in a very elaborate and instructive opinion in the case of Staples v. Franklin Bank, 1 Metc. 43, reviews the English as well as the American cases on the subject, and reaches the conclu-

sion that the weight of authority, and certainly the better reason is that after demand and refusal to pay on the last day of grace, suit may be commenced on the same day. And it would seem that his conclusion is more logical than the contrary rulings, when it is borne in mind that upon demand and refusal on the last day of grace, the paper may be protested forthwith for non-payment.

In Maine it is held that an action may be commenced on the day of the maturity of a note, after demand and refusal: Greely v. Thurston, 4 Greenl. 479.

In New Hampshire the court say: "It may now be considered as settled, that notice may be given and suit brought against the indorser on the last day of grace, after demand and notice: Dennis v. Walker, 7 New Hamp. 201.

In Maryland, in the case of Farmers Bank v. Duval, 7 Gil. & Johns. 89, the court said, it is settled that demand may be made on the last day of grace, and if payment be not made, the holder may at once treat the note as dishonored.

It is not, however, stated in terms, that an action may be at once brought.

In South Carolina, Wilson v. Williman (1 Nott & McCord, 440), it was decided by a majority of the court, that the maker may be sued on the third day of grace, after demand. Chief justice Shaw remarks that the general rule in regard to the payment of debts for rent, on bonds, for goods sold on credit, and the like, is that the debtor has until the last hour of the day in which to make payment; but that the case of bills and notes is treated as an exception to the rule.

In Kentucky the Supreme Court follows the rule in Massachusetts, and hold that the contract of the maker of negotiable paper is broken by a refusal or neglect to pay on the last day of grace, after demand made, and the holder has a right of action on the same day: Coleman v. Ewing, 4 Humph. 241.

Mr. Daniell, in his work on Negotiable Instruments, states the doctrine thus: But when the maker of a note, or the drawer or acceptor of a bill, makes it payable on a day certain, his contract is to pay it on demand on any part of that day, if made within reasonable hours.

The protest must be made on that day, which presupposes a default already made, and whether it be the last day of grace, or day of maturity when there is no grace, it is clear upon principle that as soon as payment is refused, the action may be commenced.

In Edwards on Bills, Sec.549, it is said: "The acceptor of a bill, whether inland or foreign, and the maker of a promissory note should pay it on demand made at any time within business hours of the day when it becomes payable, and if it be not paid on such demand, the holder may instantly treat it as dishonored; but the maker or acceptor has, as we have seen, the whole of that day on which to make payment; and though he should in the course of the day, refuse payment, and thus entitle the holder to give notice of dishonor, still if he makes payment afterwards and on the same day, it will be sufficient, and will render the notice of dishonor of no avail."

Mr. Justice Weston, in Flint v. Rogers, 3 Shepley, 67, observed that it is a little remarkable that there is no direct English authorities upon this point. In Lefty v. Mills, 4 Term R. 170, there is a dictum of Lord Kenyon, to the effect that suit could not be brought until the day following the third day of grace; but Buller, J., in the same case said: " I cannot refrain from expressing my dissent to what has fallen from my Lord, respecting the time when bills of exchange may be enforced. * * * The nature of the acceptor's undertaking is to pay the bill on demand on any part of the third day of grace, and that rule is now so well established that it will be exceedingly dangerous to depart from it."

But assuming the rule to be that an action will not lie against the maker of a note or the acceptor of a bill until after the expiration of the day of payment, it by no means follows that it is not his duty to pay it on that day, nor that a banker at whose counter the instrument is made payable is not authorized to pay it on presentation and demand at any time during usual business hours on the day of its maturity. By all the authorities a note or bill is *due and payable* on the last day of grace, or when grace is not allowable, on the last day it has by its terms to run.

In all the cases above cited, the contract of the maker or acceptor is held to be to pay on that day, and for a failure to pay on demand and presentation on that day, he is in default and his paper dishonored, even though he may not be liable to an action until the following day.

In those cases where a demand and refusal are necessary in order to charge the indorser of a note or bill, it is essential to the fixing of their liability, that presentment should be made on the day of maturity, provided it is within the power of the holder to make it.   Daniell on Negotiable Instruments, § 598; Parsons on Notes and Bills, 373.

If the presentment be made before the bill or note is due, it is premature and nugatory, and so far as it affects the drawer or indorser, a nullity.   And if it be made after the day of maturity, it can as a matter of course, be of no effect, as the drawer or indorser will already have been discharged, unless there were sufficient legal excuse for the delay.   Daniell, *supra;* Griffin v. Goss, 12 John. 423; Jackson v. Newton, 8 Watts, 401;  Farmers Bank v. Duval, 7 Gil. and John. 78; Mechanics Bank v. Merchant's Bank, 6 Met. 13.

As a bill or note is payable on the last day of grace, or when there is no grace, on the day of its maturity, the maker or acceptor has the right to pay it on that day, though he cannot pay it on the day before without the consent of the holder. By making his note payable at the Home National Bank, Newell authorized the bank to pay it at maturity.   He constituted the bank his agent, and directed him to pay the note on the day it fell due.   The act of making the note payable there was, as we have already seen, a direction to the bank to appropriate any moneys he might have on deposit to the payment of his note, so far as might be required for that purpose, on the day of its maturity.   The law knows no parts of a day in respect to the maturity of commercial paper ; Newell's note was equally due at ten o'clock in the morning as at three in the afternoon, and it is no answer to say that an action for its non-payment could not be brought against him for its non-payment until the following day.

He authorized his agent to pay it on the day of its maturity, and this must be construed to mean at any hour of that day.

The making of the note payable at the bank was Newell's order to pay it, and the payment was not limited to any particular hour of the day. In large commercial cities one of the ends to be subserved on the part of merchants and other business men, in making their paper payable at a bank where they keep their funds, is that the bank may see that their credit is protected by the payment of their paper promptly at maturity, and thus avoid the risk of a protest. And it has been ruled that if a note payable at a bank in which the maker has funds, at the maturity of the paper be allowed to go to protest for non-payment on the day of its maturity, although the bank had no instructions to pay the same, the bank is liable for damages for injury to the credit of the maker. Morse on Banks & B. 37; and see Thatcher v. Bank of N. Y. 5 Sandf. 121.

And such a rule, we think, is based on the soundest principles of reason and justice, as tending to stimulate watchfulness and care on the part of bankers in protecting the credit of business men and others with whom they have dealings.

No other presentation for payment was necessary than was made. The note was at the bank, and at the opening of banking hours on the day of its maturity, was at the place of payment and in the custody of the holder, and the funds of the depositor were applied to its payment.

From what we have said, it seems clear that if the note had been held by a third person, and been by the holder presented for payment during the first banking hour, the bank would have been justified in paying it to the extent of the funds or deposit to Newell's credit, and we do not think that because the bank was the holder and owner of the note, it occupied a position any less favorable than it would had the note been held by a third person.

We are therefore of the opinion that the plaintiff was not entitled to recover.

The judgment of the court below must be reversed.

Judgment reversed.